O

RECEIVED
CIRCUIT COURT
BALTIMORE CITY

**DUANE A. BLACKWELL**
**401 W. Franklin Street, Apt. 6**
**Baltimore, MD  21201**

**Plaintiff,**

    **v.**

**EQUITY MANAGEMENT II, LLC**
**14504 Greenview Drive, Suite 510**
**Laurel, MD   20708**

<u>**Serve On Resident Agent**</u>
**The Corporation Trust Incorporated**
**351 W. Camden Street**
**Baltimore, MD  21201**
    **and**

**ACCESSIBLE HOUSING ASSOCIATES**
**A Maryland Limited Partnership**
**5506 Greenspring Ave.**
**Baltimore, MD  21209**

<u>**Serve On Resident Agent:**</u>
**R. Bruce Campbell**
**Wallace H. Campbell & Co., Inc.**
**1701 Meridene Dr.**
**Baltimore, MD 21239**

    **and**

**RODNEY ROGERS**
**410 Franklin Street**
**Baltimore, MD  21202**

    **Defendants.**

2011 NOV -8  PM 4: 12

CIVIL DIVISION

**IN THE**

**CIRCUIT COURT OF**

**MARYLAND**

**FOR**

**BALTIMORE CITY**

**Case No.:_____**

## COMPLAINT AND REQUEST FOR JURY TRIAL

    Plaintiff, Duane Blackwell, by his attorneys, Michael E. Glass, Esq., Patrick S. Preller, Esq., and the Preller Glass Law Firm, LLC, sues the Defendant, Equity Management II, LLC, and in support thereof, state as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Duane Blackwell (hereinafter referred to as "Blackwell" or "Plaintiff") is a resident of the Franklin Center Apartments (the "FC Apartments"), Apartment 6A (the "Apartment) in Baltimore City, Maryland.

2.      Defendant Equity Management II, LLC (hereinafter referred to "Equity" or "Equity Management") is, upon information and belief, a limited liability company organized under the laws of Maryland that regularly conducts business in Baltimore City, Maryland.

3.      Defendant Rodney Rogers ("Rogers") in the on-site property manager of the FC Apartments and, upon information and belief, is an employee of Equity Management.

4.      Defendant Accessible Housing Associates, a Maryland limited partnership ("AHA"), is upon information and belief the owner of the FC Apartments.

5.      Venue for this case is appropriate in Baltimore City, Maryland, given that Defendants regularly conducts business in Baltimore City.

## STATEMENT OF FACTS

6.      On October 16, 2008, Rodney Rogers, Property Manager of Franklin Center Apartments located at 410 Franklin Street, Baltimore Maryland 21205, accepted Duane Blackwell's application to lease an apartment.  Blackwell has severe medical issues, is disabled, lives on a fixed income, and relies on Section 8 subsidized housing.

7.      During Plaintiff's residency at the FC Apartments, certain personality conflicts arose between Plaintiff and Rogers.

8.      In retaliation, as is explained more fully herein, Rogers has instituted a veritable reign of terror and intimidation on Plaintiff including making outrageous and slanderous accusations against Blackwell and his fiancé, and terminating his lease.

2

9.     Equity Management renewed Blackwell's lease agreement for the relevant period i.e. December 1, 2010 through November 30, 2011.

10.     On or about December 13, 2010, Rodney Rodgers confronted Blackwell with allegations that Blackwell let a known drug dealer into Franklin Center on December 10, 2010.

11.     On December 20, 2010, Equity Management sent Blackwell a Memorandum alleging that Blackwell admitted persons barred from Franklin Center Apartments due to their known drug involvement. The Memorandum stated that such actions constitute a lease violation and Blackwell would be given a Thirty (30) Day Notice to Vacate.

12.     On or about March 21, 2011, a bedroom door inside Blackwell's apartment collapsed on him. Blackwell received treatment for abrasions and head injuries at Bon Secours Hospital located at 2000 West Baltimore Street, Baltimore, Maryland 21223.

13.     The following day, March 22, 2011, Blackwell sought further treatment from the emergency room at Mercy Medical Center.

14.     Nationwide Insurance, on March 23, 2011, settled Blackwell's insurance claim for the aforementioned incident.

15.     In March or April of 2011, Rogers and Equity Management had Ms. Christine Smith's (Blackwell's nurse) car towed while she had a proper parking pass displayed in her vehicle.

16.     On May 11, 2011, Equity Management, through counsel, wrote to Blackwell informing him of its intention to terminate his tenancy.

17.     Equity Management made several false allegations including (1) that Blackwell granted known drug dealers access to Franklin and that Blackwell was served illegal drugs inside his unit. (2) that Blackwell's care provider and fiancé was a prostitute (3) that Blackwell

3

submitted a false claim to Equity's insurance provider that one of his doors struck him causing physical harm (notwithstanding that the insurance company settled the claim), and (4) that Blackwell himself engaged in illegal drug use within his unit.

18.     Two days later, on May 13, 2011, Equity Management again wrote Blackwell. The May 13th letter reiterated the prior allegations against Blackwell and further included a frivolous allegation that Blackwell had been cited in a March 2011 Quality Control Inspection for having "decorative accessories hanging from the sprinkler heads."

19.     Blackwell is a patient under the care of P.A. Newton, M.D., M.P.H., M.A. Blackwell has no history of drug or alcohol abuse and has not received any medical treatment for either of these conditions. Blackwell suffers from the severe debilitating condition, Bechet's Syndrome, which causes severe pain and inflammation and for which only palliative care is available with no known cure. Additionally, Blackwell suffers from Major Depressive Disorder.

20.     On or about May 21, 2011, P.A. Newton, Blackwell's doctor, determined that Equity Management's unfounded accusations against Blackwell regarding his alleged illicit drug use exacerbated his anxiety and depressive symptoms as well as his chronic pain condition.

21.     On July 20, 2011, Equity Management filed suit in the District Court of Maryland against Blackwell.

22.     On July 28, 2011, Blackwell, who had already retained undersigned counsel, was informed in writing by Equity Management's counsel that his lease would not be renewed and he must vacate the premises. The letter presented an extensive list of outrageous, unfounded, and defamatory allegations as grounds for holding Blackwell in violation of the lease agreement including:

    a.   Blackwell "granted known drug dealers access to Franklin on or about December

13, 2010."

b. Blackwell's "care provider has engaged in prostitution on the premises by performing sexual acts in exchange for money on the grounds of Franklin."

c. "On or about March 15, 2011 during a quality control inspection management observed items hanging from the sprinklers in [Blackwell's] unit that posed a safety risk."

d. Blackwell maintained his "unit in an unsanitary condition."

e. Blackwell "permitted unauthorized occupants to reside in [his] unit including his care provider's minor child."

f. Blackwell "in fact caused the disrepair to [his] door as a scam to obtain a $1,000.00 pay-out from Equity's insurance provider."

g. Blackwell "committed fraud by maintaining the utilities in the name of the previous deceased resident causing the utility bill to exceed $5,000.00 dollars. On or about October 21, 2010, [Blackwell] solicited a letter from management in an attempt to have the utilities in [his] unit fraudulently placed in the name of [his] caregiver who is not a tenant on the lease."

h. Blackwell made "slanderous statements about the manager at Franklin to other residents"

i. Blackwell, without cause, "lodged false, salacious and unsubstantiated complaints against the manager at Franklin to the corporate office of Equity..."

23.     On August 3, 2011 Property Manager Rodney Rogers informed Blackwell in writing that his lease would not be renewed and that termination of Blackwell's tenancy at Franklin Center Apartments directly affects his HUD Section 8 Program Funding. The letter

further states that HUD was notified of the non-renewal and Blackwell may wish to contact his HUD caseworker to discuss alternate housing arrangements and the status of his funding with HUD.

24.     Upon information and belief, Blackwell's utility bill for Baltimore Gas and Electric far exceeds the billing for other Franklin Center residents.

25.     BG&E sent a repairman to inspect the equipment servicing Plaintiff's apartment, and concluded that it was outdated, inefficient, and needed to be replaced in order to lower the bills.  Plaintiff has repeatedly complained of the excessive billing to Defendants who have done nothing to correct the problem.

26.     Furthermore, Plaintiff timely filled out an application to change the BG&E bill into his name, submitted same to Rogers, who failed to submit it to BG&E causing the balance in Plaintiff's unit to skyrocket.

27.     Due to Rogers' failure to timely submit the application, Plaintiff was left with a BG&E balance equaling thousands of dollars, which he has been unable to afford.

28.     Solely as a result of the aforementioned allegations and actions taken against Plaintiff Blackwell, the Plaintiff has incurred damages, including:

  a.  medical expenses;

  b.  exacerbation of pre-existing clinical anxiety;

  c.  exacerbation of pre-existing clinical depression;

  d.  exacerbation of pre-existing chronic pain condition;

  e.  readjustment of medications resulting in indefinite period of treatment with prescribed medications;

  f.  serious anxiety, mental anguish, emotional distress, and emotional distress

relating to allegations against his character and the character of his live-in care provider;

g. serious anxiety, mental anguish, pain, suffering, and emotional distress regarding the threatened eviction from his home;

h. exacerbation of Bechet's Syndrome and concomitant chronic pain associated and related thereto.

## COUNT I
### (RESPONDEAT SUPERIOR)

29. The preceding and subsequent paragraphs are incorporated as if fully set forth herein.

30. The acts described herein of Rogers were committed within the scope of his employment with Equity in that he committed them while on duty, inside and on the premises of of the FC Apartments where Equity had property management responsibilities, and in furtherance of Defendant Equity's interests.

31. As Rogers employer, Equity is responsible for all of the acts committed by Rogers within the scope of his employment.

32. Equity was AHA's agent and was engaged to provide property management services to AHA.

33. Equity, as AHA's agent, has engaged in a reign of terror in the acts and allegations perpetrated against Blackwell (described above and below) through its employee, Rogers, within the scope of performing property management services for which it had been engaged by AHA and while acting in furtherance of AHA's interests.

34. The acts of Rogers as an employee of Equity, and by Equity as AHA's agent, were committed negligently.

35. The acts of Rogers as an employee of Equity, and by Equity as AHA's agent, were committed with scienter, ill-will, hatred, and actual malice towards the Blackwell with the intent to cause him harm and injury.

36. The acts of Rogers as an employee of Equity, and by Equity as AHA's agent, caused monetary loss and extreme mental pain, physical pain, suffering, anguish, emotional distress, anxiety, and humiliation.

## COUNT II
### (WRONGFUL EVICTION)

37.   The Plaintiff incorporates herein by reference hereto the preceding and subsequent paragraphs above as if more fully set forth herein at length.

38.   Plaintiff was in lawful possession of the Apartment by virtue of his December 1, 2010 lease renewal and his rent payments to the Defendant which, at all times relevant, were current.

39.   On or about May 13, 2011, Defendant unlawfully gave notice to vacate without good cause.

40.   Defendant recklessly and intentionally issued the Notice to Vacate and subsequently filed a Breach of Lease action on June 20, 2011. As grounds for eviction, Defendant falsely stated that Plaintiff Blackwell was engaged in illicit drug activity, facilitating prostitution, fraud, and generally kept his residence in unsanitary and unsafe conditions in violation of the Lease.

41.   Defendant unlawfully refuses to renew Plaintiff's lease due to expire on November 30, 2011. Defendant fails to demonstrate good cause, as is necessary for non-renewal in subsidized housing, and thus, Defendant's action constitutes a wrongful eviction.

42.   Defendants' actions and impending eviction of Plaintiff have been carried out

8

with evil motive, ill will, actual malice, with intent to injure and harm Plaintiff, are without justification, and constitute a wrongful eviction of Plaintiff from the Apartment.

43.     Rogers has exhibited an outright malice and hatred against Blackwell in making false and salacious comments and instituting the eviction proceedings without basis or cause.

44.     Defendant's wrongful eviction threatens loss of Plaintiff's property interest, and caused Plaintiff to suffer great physical pain, mental and emotional anguish.

45.     As a direct result of Defendant's wrongful eviction, Plaintiff suffered economic damages, and non-economic damages as described above.

**WHEREFORE**, Plaintiff, Duane Blackwell requests judgment against Defendant Equity Management II, LLC, Rodney Rogers, Accessible Housing Associates, a Maryland Limited Partnership, jointly and severally, for compensatory damages of Two Million Dollars and punitive damages of Two Million Dollars (as determined by a jury , plus interest, attorneys' fees, and the costs of this action.

## COUNT III
### (RETALIATORY EVICTION- VIOLATION OF MARYLAND CODE § 8–208.1 and PUBLIC LOCAL LAW §9-10)

46.     The Plaintiff incorporates herein by reference hereto the preceding and subsequent paragraphs above as if more fully set forth herein at length.

47.     The Plaintiff tenant in good faith complained to the landlord and Equity Management's Corporate Office about the allegations threatening Plaintiff's right to lease the property.

48.     The Plaintiff tenant in good faith filed an insurance claim with Equity Management's insurance company Nationwide Insurance regarding injuries sustained by the faulty door that collapsed upon said Plaintiff.

49.     Due to Defendant's disdain for the Plaintiff and in response to Plaintiff's good faith requests for relief, Defendants have alleged unsubstantiated claims and unfounded alleged breaches of lease in order to evict the Plaintiff from Franklin Center Apartments.

50.     Defendant's conduct caused Plaintiff to suffer harm (described *supra*).

51.     As a direct and proximate result of Defendant's retaliatory eviction efforts, Plaintiff has suffered economic and non-economic damages

52.     Defendants' actions have been carried out with scienter, hatred and ill-will in an effort to cause Plaintiff harm.

**WHEREFORE**, Plaintiff, Duane Blackwell requests judgment against Defendant Equity Management II, LLC, Rodney Rogers, Accessible Housing Associates, a Maryland Limited Partnership, jointly and severally, for compensatory damages of Two Million Dollars, punitive damages of Two Million Dollars (as to be determined by a jury), plus interest, attorneys' fees, and the costs of this action.

## COUNT IV
## (NEGLIGENCE)

53. The preceding and subsequent paragraphs are incorporated as if fully set forth herein.

54.     Defendants had a duty to follow applicable Maryland Statutes and the Baltimore City Code in not engaging in retaliatory actions for legitimate complaints made by Plaintiff about the conditions of his apartment.

55.     Defendants had a duty not to unreasonably interfere with Plaintiff's use and enjoyment of his residence.

56.     As Defendants had no legitimate bases to do so, Defendants had a duty not to instigate an action to terminate Plaintiff's Lease.

57.   Defendants breached their duty by violating applicable Maryland statute and Baltimore City Code provisions.

58.   As a direct and proximate result of Defendants' breach of their duties, Plaintiff suffered economic and non-economic damages (as described herein), as well as extreme mental pain, emotional distress, humiliation, embarrassment, mental trauma, and anguish.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in the amount of Two Million Dollars, with interest and costs, and attorney's fees in an amount to be determined by a jury.

## COUNT V
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

59.   The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

60.   The Plaintiff is and was at all relevant times a resident at Franklin Center Apartments.

61.   Franklin Center Apartments are and were at all relevant times under the care and control of Defendant, its agents, servants and employees.

62.   During the Plaintiff's time as a resident at Franklin, Defendant repeatedly subjected him to malicious unsubstantiated allegations specifically, violations of the lease, criminal behavior, and poor moral character.

63.   Defendant's conduct was intentional, reckless, and in deliberate disregard of a high degree of probability that emotional distress would result to the Plaintiff.

64.   Defendant knew or should have known the Plaintiff's pre-existing medical conditions prior to engaging in such conduct.

65.   The aforesaid conduct by Defendant and its agents was extreme and outrageous

11

and beyond the bounds of decency in society.

66.     The conduct of Defendant's agents was malicious, willful, and intentional.

67.     As a result of the aforesaid conduct and actions, the Plaintiff has suffered, and will continue to suffer, severe and extreme emotional distress.

68.     As a direct result of Defendant's intentional infliction of emotional distress, Plaintiff suffered economic and non-economic damages.

**WHEREFORE**, Plaintiff, Duane Blackwell requests judgment against Defendant Equity Management II, LLC for compensatory damages of Two Million Dollars and punitive damages of Two Million Dollars (in an amount to be determined by a jury) plus interest, costs and attorneys' fees.

## COUNT VI
## (CONVERSION AND TRESPASS TO CHATTELS)

69.     The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

70.     Plaintiff was lawfully residing at Apartment 6A, and his rent was current at all times relevant. These payments were accepted by Defendant as full payment of rent amounts.

71.     On May 13, 2011, Defendant posted a notice to vacate on Plaintiff's door. Then, on June 20, 2011, Defendant filed with the court to evict the Plaintiff for breach of lease.

72.     In furtherance of these efforts to improperly evict the Plaintiff, Defendant and agents of the Defendant unlawfully entered the Plaintiff's premises and rummaged through his belongings seeking incriminating evidence.

73.     As a result of Defendant's wrongful conduct, Plaintiff was temporarily dispossessed of his personal possessions, and Plaintiff has suffered great emotional and mental distress.

74.    Defendant's actions constitute a trespass to Plaintiff's property.

75.    Defendant's wrongful possession was exercised with hostile dominion over Plaintiff's possessions and was not previously agreed upon, was intentional, and without permission or justification.

76.    Defendant's conduct caused Plaintiff to suffer harm (described *supra*).

77.    As a direct result of Defendant's conversion and trespass to chattels, Plaintiff suffered economic and non-economic damages.

78.    Defendants' acts were perpetrated with scienter, ill-will, hatred and intent to cause Plaintiff harm.

**WHEREFORE**, Plaintiff, Duane Blackwell requests judgment against Defendant Equity Management II, LLC for compensatory damages of Two Million Dollars, punitive damages of Two Million Dollars (and as determined by a jury), plus interest and the costs of this action.

**COUNT VII**
**(VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT)**

79.    The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

80.    Defendant owed a duty to inform the Plaintiff of all expenses associated with residency at Franklin Center Apartments.

81.    Defendant owed a duty to insure safe living conditions to the Plaintiff tenant.

82.    Defendant misrepresented to Plaintiff the expense of utilities, especially the amount Plaintiff would owe to Baltimore Gas and Electric on a monthly basis.

83.    Defendant failed to tender Plaintiff's application for utility service causing Plaintiff to incur a substantial and inflated bill.

84.    Plaintiff's monthly utility bills are unreasonably high due to a faulty and outdated

13

HVAC system which Defendants refuse to repair, resulting in utility bills that are unreasonable and that Plaintiff cannot afford.

85.     Defendant misrepresented the living conditions of apartment 6A. On or about March 21, 2011, an improperly secured bedroom door collapsed upon the Plaintiff causing serious injury.

86.     Defendants represented in the Lease with Plaintiff and pursuant to applicable law that Plaintiff could use the Apartment without unreasonable interference from Defendants.

87.     Defendants have breached the covenant of quiet enjoyment and their promises to Plaintiff to let him live without disruption or harassment.

88.     Defendant's breach of the covenant of quiet enjoyment, explicit and implicit misrepresentations concerning the covenant of quiet enjoyment, misstatements and/or material omissions made directly to the Plaintiff concerning the quality of Defendant's property and services constitute unfair and deceptive trade practices in violation of the Consumer Protection Act.

89.     Defendant's misrepresentations violate the Maryland Consumer Protection Act and have caused Plaintiff to suffer harm (described *supra*).

90.     As a direct result of Defendants' conduct and misrepresentations, , Plaintiff suffered economic and non-economic damages.

91.     The underlying Lease for rent of a residential apartment constitutes a qualifying consumer transaction within the meaning of the Maryland Consumer Protection Act (MD Code Ann. Comm'l Law, §§13-301, *et seq*.; hereinafter "MCPA").

92.     Upon entering into the Lease, Defendant Equity Management and its agents entered into a covenant of quiet enjoyment whereby they agreed not to disturb Plaintiff's right to use the Apartment.

93.     Defendants have engaged in unfair and deceptive trade practices within the meaning of the MCPA by, among other things, (a) attempting to evict Plaintiff without cause, (b) misrepresenting the living conditions of the Apartment, and (c) breaching the covenant of quiet enjoyment.

94.     ..Defendants misrepresentations to Plaintiff, failure to follow proper legal procedure and process in attempting to illegally evict plaintiff, and breaching the covenant of quiet enjoyment violates the MCPA and constitutes a deceptive or unfair trade practice within the meaning of the MCPA.

95.     As a result of Defendants' actions and misrepresentations, Plaintiff has suffered harm and is entitled to obtain relief pursuant to the MCPA.

96.     Plaintiff has been damaged by Defendants' direct and indirect actions, described herein through the misrepresentations and attempted illegal eviction that has cost them legal fees and expenses to file this case to recoup the value of their property, and emotional damages due to the stress and other physical manifestations caused by the illegal acts described herein.

97.     .Pursuant to Md. Code Ann. Comm. Law §13-408 Plaintiffs demands damages of $1,500,000 plus costs and attorneys fees.

**WHEREFORE**, Plaintiff, Duane Blackwell requests judgment against Defendants jointly and severally for compensatory economic and non-economic damages of Two Millions Dollars, plus interest, the costs of this action and attorneys' fees..

## COUNT VIII
## (BREACH OF IMPLIED COVENANT OF QUIET ENJOYMENT)

98.     The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

99.     Defendant engaged in a residential lease with the Plaintiff that was most recently renewed on December 1, 2010 for a one (1) year term.

100.    As lessee holding the apartment under a fee, Plaintiff was entitled to the quiet enjoyment of the premises during his term.

101.    Rodney Rogers and other agents of Defendant interfered with Plaintiff tenant's right to use and enjoy the premises for his contemplated purposes by unjustifiably alleging unlawful activity on Plaintiff's behalf, trespassing, and harassing Plaintiff.

102.    Plaintiff has received numerous threats to his tenancy that disrupt his ability to enjoy his premises.

103.    Defendant's agents have entered the Plaintiff's residence without cause on numerous occasions.

104.    Defendant's conduct constituted a breach of implied covenant of quiet enjoyment caused Plaintiff to suffer harm (described *supra*).

105.    As a direct result of Defendant's breach of implied covenant of quiet enjoyment, Plaintiff suffered economic and non-economic damages.

**WHEREFORE,** Plaintiff, Duane Blackwell requests judgment against Defendants jointly and severally for compensatory damages of Two Million Dollars, plus interest, attorney's fees, and the costs of this action.

16

## COUNT IX
## (DEFAMATION)

106.   · The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

107.   Plaintiff entered into a residential lease contract with Equity Management II, LLC on December 1, 2010. The duration of the agreement was one (1) year with the assumption of yearly renewal for the remainder of Plaintiff's life.

108.   Plaintiff's contract with Equity Management was a mutually beneficial agreement.

109.   Rodney Rogers, the Property Manager at Franklin Street Apartments, developed a personal dislike of Plaintiff during his residence and sought to interfere with the aforementioned contract by creating grounds to evict Plaintiff.

110.   Rogers created a litany of allegations against the Plaintiff to make his living conditions at Franklin unbearable.

111.   Rogers negated the Plaintiff's attempts to communicate his grievances and explain himself to the Corporate Office of Equity Management by pre-empting Blackwell's efforts on or about December 13, 2010 in a communication to Regional Director Eleanor Timanus.

112.   Despite the existence of a lawful contract between Equity Management and the Plaintiff, Rogers persisted in his attempts to degrade the parties' relations and to allege the Plaintiff had violated the lease terms thus requiring eviction.

113.   Without legal justification, Rogers intentionally and improperly interfered with Plaintiff's performance of his contract with Equity Management by creating salacious charges to evict the Plaintiff.

114.   As a result of Roger's false representations, Equity Management has notified the Plaintiff that his lease will not be renewed and he must vacate the premises.

115.   Defendant's conduct caused Plaintiff to suffer harm (described *supra*).

116.   On multiple occasions since December 2010, in an effort to defame and inflict injury upon the Plaintiff, Defendant wrote and published memoranda and letters claiming (1) Blackwell "granted known drug dealers access to Franklin on or about December 13, 2010." (2) Blackwell's "care provider has engaged in prostitution on the premises by performing sexual acts in exchange for money on the grounds of Franklin." (3) Blackwell maintained his "unit in an unsanitary condition." (4) Blackwell "in fact caused the disrepair to [his] door as a scam to obtain a $1,000.00 pay-out from Equity's insurance provider." (5) Blackwell "committed fraud by maintaining the utilities in the name of the previous deceased resident causing the utility bill to exceed $5,000.00 dollars. On or about October 21, 2010, [Blackwell] solicited a letter from management in an attempt to have the utilities in [his] unit fraudulently placed in the name of [his] caregiver who is not a tenant on the lease." (6) Blackwell made "slanderous statements about the manager at Franklin to other residents" (7) Blackwell, without cause, "lodged false, salacious and unsubstantiated complaints against the manager at Franklin to the corporate office of Equity…"

117.   These statements were defamatory in tending to impugn the Plaintiff to be a drug user, drug dealer, fraudulent, slanderous, a malcontent, and a facilitator of prostitution.

118.   In his writings, Defendant knowingly made the aforementioned false and defamatory statements about Plaintiff Blackwell.

119.   Defendant published the false and defamatory accusations to Equity Management's Corporate Office, agents of Equity Management, Housing and Urban

Development and, upon information and belief, other residents, who understood this publication to be defamatory.

120.    Defendant Rodgers acted with knowledge of the falsity of the statements and with the intent to harm Plaintiff Blackwell's ability to renew his lease when publishing these false and defamatory statements about Plaintiff Blackwell.

121.    As a result of the false and defamatory statements published by Defendant Rodgers, the character and reputation of the Plaintiff were harmed, his standing in the Franklin Street community destroyed, and he suffered severe mental anguish and personal humiliation.

122.    As a direct and proximate result of the false and defamatory publications by the Defendant, Plaintiff Blackwell's lease is not being renewed, and thereby Plaintiff suffers the loss of the prospective value of his subsidized housing at Franklin Street Apartments for the anticipated remainder of life.

123.    As a direct result of Defendant's unreasonably dangerous situation, Plaintiff suffered economic and non-economic damages.

**WHEREFORE**, Plaintiff, Duane Blackwell requests judgment against Defendant Equity Management II, LLC for compensatory damages of Two Million Dollars, plus interest and the costs of this action.

## COUNT X
### (TORTS ARISING FROM BREACH OF CONTRACT)

124.    The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

125.    Plaintiff and Defendant entered into a contractual relationship that predates any allegations that Plaintiff breached the lease terms.

126.    Beginning on December 13, 2010 and continuing to the present date, Defendant

19

has alleged the Plaintiff violated the lease agreement.

127.   All such allegations of lease violations are unsubstantiated and predicated on hearsay evidence.

128.   There is a direct nexus between the tortious conduct of the Defendant and the breach of the underlying contract such that the tortious conduct and the contract are so intertwined that one cannot be viewed in isolation from the other.

129.   Rodney Rogers, agent of Equity Management, made unjust allegations against the Plaintiff in furtherance of his attempt to unlawfully evict the Plaintiff. Such actions were taken intentionally or wantonly, without legal justification or excuse, but with an evil or rancorous motive influenced by hate the purpose being to deliberately and willfully injure the Plaintiff.

130.   Defendant's conduct caused Plaintiff to suffer harm (described *supra*).

131.   As a direct result of Defendant's unreasonably dangerous situation, Plaintiff· suffered economic and non-economic damages.

**WHEREFORE**, Plaintiff, Duane Blackwell requests judgment against Defendant Equity Management II, LLC for compensatory damages of Two Million Dollars, plus interest and the costs of this action.

## COUNT XI
## (INJURIOUS FALSEHOOD)

132.   The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

133.   Defendant has made multiple written and oral statements disparaging the Plaintiff's character and fitness as a tenant.

134.   In said statements, Defendant knowingly made false allegations about Plaintiff Blackwell's character, namely that he is a drug dealer, illicit drug user, facilitator of prostitution,

and engaged in an insurance scam.

135.   Defendant made this false publication to the agents of Equity Management, posted public notice of allegations and eviction on Plaintiff's door, and made Housing and Urban Development aware of the same.

136.   Defendant made these allegations with the knowledge that Plaintiff intended on renewing his lease and is in full reliance on subsidized housing given his disability and fixed income.

137.   Defendant acted with malice and intent to harm Plaintiff Blackwell when making these false statements.

138.   As a direct result of the malicious and deliberate actions of the Defendant, Equity Management has refused to renew the Plaintiff's lease, and Plaintiff faces repercussions from HUD that may jeopardize his ability to obtain the necessary housing subsidy in the future.

139.   As a direct result of Defendant's injurious falsehood, Plaintiff suffered economic and non-economic damages.

**WHEREFORE**, Plaintiff, Duane Blackwell requests judgment against Defendant Equity Management II, LLC for compensatory economic and non-economic damages of Two Million Dollars, punitive damages as to be determined by a jury, plus interest and the costs of this action.

<u>**COUNT XII**</u>
**(INVASION OF PRIVACY- INTRUSION UPON SECLUSION)**

140.   The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

141.   Property Manager Rodney Rogers alleges that Equity Management's Porter, Richard Davis did observe and report the Plaintiff admitting a known drug dealer into Franklin Center.

21

142.    Rogers alleges that two residents of Franklin Center reported that the Plaintiff's care provider engaged in prostitution on the premises. Rogers engaged in no investigation as to the validity of these statements and found no misconduct or lease violations on behalf of those tenants who purportedly engaged in said prostitution services.

143.    Rogers, on behalf of Equity Management, subsequently searched the Plaintiff's apartment for illicit drugs, ordered intrusive scrutiny over Plaintiff's activities, issued a notice to vacate, informed HUD, and filed an eviction action against the Plaintiff without further investigation to ascertain the validity of any claims.

144.    The conduct of Rogers, which constituted an intentional intrusion into the privacy of the Plaintiff, was highly offensive to a reasonable person.

145.    Defendant's conduct caused Plaintiff to suffer harm (described *supra*) including humiliation and mental distress.

146.    As a direct result of Defendant's unreasonably dangerous situation, Plaintiff suffered economic and non-economic damages.

**WHEREFORE**, Plaintiff, Duane Blackwell requests judgment against Defendants, jointly and severally,  Equity Management II, LLC for compensatory economic and non-economic damages of Two Million Dollars, plus interest and the costs of this action.

## COUNT XIII
## (INVASION OF PRIVACY- FALSE LIGHT)

147.    The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

148.    Property Manager Rodney Rogers alleges that Plaintiff personally engages in illicit drug use and that the Plaintiff's live in care provider is a prostitute.

149.    Defendant knew Plaintiff Blackwell was disabled, diagnosed with chronic

22

conditions that require prescribed drug use, not illicit recreational drugs. Defendant knew or should have known that Plaintiff has a clear record with no history of drug abuse whatsoever.

150.    Defendant knew that Plaintiff Blackwell was disabled and required a live in care provider whom is gainfully employed and whom conducts no business as a prostitute.

151.    Rogers, on behalf of Equity Management, improperly publicized facts about Plaintiff which placed Plaintiff in a false light by attributing to him conduct and characteristics which were false.

152.    Defendant knew that the facts publicized about the private life of Plaintiff were false, or published them with a reckless disregard for the truth of those facts.

153.    The publication of these facts was highly offensive to any reasonable person.

154.    The aforementioned allegations are now widely known amongst other residents of Franklin Center due to Rogers conduct.

155.    Defendant's conduct caused Plaintiff to suffer harm (described supra) including humiliation and mental distress.

**WHEREFORE,** Plaintiff, Duane Blackwell requests judgment against Defendants, jointly and severally, for compensatory economic and non-economic damages of Two Million Dollars, plus interest, attorney's fees, and the costs of this action.

**COUNT XIV**
**(VIOLATION OF 42 U.S.C.A. §3604(f)(1)(A) –**
**DISCRIMINATION IN THE SALE OR RENTAL OF HOUSING)**

156.    The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

157.    Defendant knew Plaintiff Blackwell was disabled, diagnosed with chronic conditions and has not engaged in illicit recreational drugs.

23

158.    Defendant knew or should have known that Plaintiff Blackwell received continual treatment for his handicap from Dr. P.A. Newton.

159.    Defendant knew that Plaintiff Blackwell was disabled and required a live in care provider at apartment 6A.

160.    Defendant refused to make reasonable accommodations in Franklin Center's rules to accommodate the Plaintiff's disability and allow Plaintiff equal opportunity to enjoy the premises.

161.    Defendant refused to continue the existing lease contract with the Plaintiff and further refused any future dealings with the Plaintiff because of his disability.

162.    Defendant's conduct caused Plaintiff to suffer harm (described *supra*) including loss of housing, humiliation and mental distress.

**WHEREFORE**, Plaintiff, Duane Blackwell requests judgment against Defendants for compensatory economic and non-economic damages of Two Million Dollars, plus interest, attorney's fees, and the costs of this action.

## COUNT XV
## (DECLARATORY JUDGMENT)

163.    The Plaintiff incorporates herein by reference hereto the preceding paragraphs above as if more fully set forth herein at length.

164.    Defendant Equity Management has initiated proceedings to terminate the Lease.

165.    Defendant Equity Management, however, has not established or even averred facts that comprise good cause necessary to terminate the Lease.

166.    Antagonistic claims are present between the parties.  These claims indicate imminent and inevitable litigation.

167.    A declaratory judgment will terminate this controversy.

WHEREFORE, Plaintiff respectfully requests:

a. That the Court determine and adjudicate the rights and liabilities of the parties.

b. That the Court determine that Defendants have not established good cause to terminate Plaintiff's lease; and

c. That this Court award Plaintiff costs of these proceedings; and

d. That this Court award Plaintiff such other and further relief as the nature of its cause may require.

Respectfully submitted,

Michael E. Glass, Esq.
The Preller Glass Law Firm, LLC
218 E. Lexington Street, Suite 700
Baltimore, MD 21202
*Attorneys for the Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff Duane Blackwell hereby requests that his case by heard by a jury.

Michael E. Glass, Esq.